IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS DIGIACOMO,** | : | Civil Action |
| | : | No. |
| **Plaintiff,** | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| **OFFICER MARK WILDSMITH,** | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT (CIVIL ACTION)

### I.   PARTIES

1. Plaintiff Thomas DiGiacomo works as a nurse and resides in Bucks County.

2. Defendant Officer Mark Wildsmith was at all relevant times employed by the Bensalem Police Department.

3. At all relevant times, defendant was acting under color of state law.

### II.   JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. § 1983 and defendants' conduct alleged herein was performed under color of state law. Jurisdiction is founded upon 28 U.S.C. § 1331.

5. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is properly laid in this judicial district, as defendant is found therein, and all acts and events giving rise to the complaint occurred therein.

### III.   ALLEGATION OF MATERIAL FACT

7. On or around March 25, 2024, Plaintiff was engaged in a dispute with his then-landlord.

8. Unbeknownst to Plaintiff, and without admitting its legality, Plaintiff's landlord determined to evict him.

9. On March 25, 2024 defendant came to Plaintiff's rental residence to effectuate the eviction, along with several other officers.

10. Plaintiff was confused by the presence of the officers, believing the eviction was scheduled for the following day, March 26, 2024, and did not immediately grant them access to the property.

11. Although the officers, including defendant, did not clear up Plaintiff's confusion, Plaintiff offered to surrender himself.

12. The officers, including defendant, told plaintiff that they were going to forcibly enter the property instead to "get you."

13. Because defendant and the other officers were aggressive and threatening when they arrived at the home, which frightened Plaitniff, Plaintiff exited the home through a window and sheltered on the roof.

14. Defendant and the other officers threatened to use force to remove Plaintiff from the property if he did not comply with their directives.

15. Defendant climbed onto the roof where Plaintiff was.

16. Plaintiff announced he would comply with the officers' directives and would not offer any resistance.

17. Wildsmith, however, was annoyed with Plaintiff's conduct, and determined that he would teach plaintiff a "lesson" by utilizing force to cause him pain.

18. Despite not resisting defendant or any other officer, and not being a flight risk or a danger to himself or anyone else, Wildsmith, in accordance with his plan to injure Plaintiff, violently Plaintiff, handcuffed him, and threw him back into the home through the window, during which time plaintiff forcefully collided with the window frame.

19. Plaintiff landed on a bed adjacent to the window, where Wildsmith grabbed him and slammed him into the wall multiples times as he led Plaintiff downstairs to the door of the home.

20. Wildsmith used such a high degree of force that his sudden, violent conduct tore Plaintiff's right bicep tendon distally.

21. Plaintiff's right bicep had never been injured before.

22. Plaintiff was then formally arrested, charged with various offenses, and brought to the Bensalem Police Station.

23. After a bail hearing, Plaintiff was re-handcuffed, this time behind his back, and it was immediately painful.

24. Plaintiff immediately complained of significant pain, and asked for relief, including repositioning of the handcuffs.

25. The handcuffs were repositioned one time.  Plaintiff advised it made the pain worse, but defendants refused further interventions.

26. After Plaintiff was arrested, he held in custody at Bucks County Correctional Facility.

27. While there, he immediately complained to medical staff of pain at his right bicep that resulted from Officer Wildsmith's use of force.

28. During intake, Bucks County Correctional Facility staff recommended that Plaintiff be taken to a hospital for evaluation, but Wildsmith explicitly refused to do so.

29. Plaintiff was treated at Bucks County Correctional Facility with pain management medications.

30. Plaintiff's right distal bicep injury remained obvious upon visual inspection at least one month after it occurred.

31. His right arm was x-rayed on March 28, 2024, but Plaintiff did not receive the x-ray results until at least one month later.

32. He was diagnosed with a bicep tear at least as of May 17, 2024.

33. While in Bucks County Correctional Facility, Plaintiff was never given an MRI.

34. Upon release from custody, Plaintiff consulted with medical providers.

35. Plaintiff was diagnosed with a fully torn distal right bicep tendon with retraction of the muscle.

36. Since the injury, Plaintiff cannot flex his right elbow without experiencing pain, which interferes with his activities of daily living and ability to perform physical labor.

37. Plaintiff undertook a course of physical therapy, which failed to resolve his pain and dysfunction.

38. Only surgery can possibly heal plaintiff's injury, but it requires the harvesting of tissue from elsewhere in the body, and the chances of a successful surgical outcome are not assured, and the minimum recovery time would be no less than three months during which the right arm is immobilized.

39. Plaintiff cannot maintain employment without the use of his right arm.

40. As a result of the foregoing violation of DiGiacomo's constitutional rights, he suffered significant damages and harms, including but not limited to:

    a. loss of liberty;

    b. emotional distress;

    c. severe physical pain and suffering;

    d. interference with his daily activities;

    e. wage loss and loss of earning capacity;

    f. out of pocket medical costs;

    g. all other forms of damages provided pursuant to 42 Pa.C.S. §8302;

    some or all of which are ongoing and/or permanent.

41. Plaintiff's damages and harms were caused by the culpable conduct of Defendant, alleged in greater detailed herein.

42. The conduct of Defendant was carried out in wanton and outrageous disregard for the Constitution and Plaintiff's rights thereunder, and was motivated solely by his self-interest, completely unrelated to the administration of justice, thereby warranting an award of exemplary damages against him.

## IV.   CAUSES OF ACTION

**COUNT ONE**
**42 U.S.C. § 1983 - Excessive Force (Fourth and Fourteenth Amendments)**

43. Plaintiff incorporates by reference each of the preceding as though each were set forth herein in their entirety.

44. As set forth more fully hereinabove, Officer Wildsmith's use of force was unreasonable under the circumstances, which include:

    a.  Plaintiff's lack of resistance at the time force was used;

    b.  Wildsmith's escalation of the confrontation after Plaintiff agreed to comply;

    c.  The lack of any threat to Plaintiff, Officer Wildsmith, or any others;

    d.  The lack of severity of any crime;

    e.  The continuation of the use of force after Plaintiff was restrained;

    f.  Failing to adjust the handcuffs placed on Plaintiff after Wildsmith was notified of the harm they were causing

45. Plaintiff suffered the harms and damages alleged hereinabove as a direct and proximate result of defendants' unconstitutional use of force against Plaintiff, in violation of his rights under the Fourteenth Amendment of the Constitution of the United States.

## COUNT TWO
## 42 U.S.C. § 1983 - Failure to Provide Medical Care (Fourteenth Amendments)

46. Plaintiff incorporates by reference each of the preceding as though each were set forth herein in their entirety.

47. Wildsmith knew that Plaintiff was injured and needed medical attention upon bringing him to Bucks County Correctional Facility.

48. Wildsmith purposefully ignored Plaintiff's medical needs.

49. Wildsmith did so because he intended that Plaintiff continue to suffer pain.

50. Plaintiff suffered the harms and damages alleged hereinabove as a direct and proximate result of defendants' unconstitutional use of force against Plaintiff, in violation of her rights under the Fourteenth Amendment of the Constitution of the United States.

## V.  JURY DEMAND

51. Plaintiff demands a jury determination of all issues so triable.

## VI.  PRAYER FOR RELIEF

WHEREFORE, plaintiff prays the Court for judgment in her favor, against all defendants, individually, jointly and severally, and asks for the following relief:

a) compensatory and general damages;

b) punitive damages against all individual defendants;

c) attorney's fees and costs pursuant to 42 U.S.C. § 1988;

d) such interest and other costs as are allowed by law;

e) such other relief as the Court deems just and equitable.

Respectfully submitted,

WILLIAMS CEDAR

Dated: 01/21/2026

By: Christopher Markos, Esquire
PA ID No. 308997
Gerald J. Williams, Esquire
PA ID No. 36418
One South Broad Street
Suite 1510
Philadelphia, PA 19107
cmarkos@williamscedar.com

P. 215-557-0099
F. 267-273-7757

Dated: January 21, 2026